## JOHN B. MURPHY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6675.   Promulgated September 30, 1927.

The petitioner was a member of a syndicate which sold certain assets to a corporation in exchange for shares of stock. For his contribution to the syndicate the petitioner received 184 shares of stock of the corporation. *Held*, the evidence is insufficient to show that the Commissioner erred in finding that the fair market value of the shares received by the petitioner was $20 per share and in computing the profit on the transaction.

*Maynard Teall, Esq.*, for the petitioner.
*A. S. Lisenby, Esq.*, for the respondent.

This proceeding involves alleged deficiencies of income taxes in the amount of $4,261.13 for the year 1919, $4,328.66 for the year 1920, and $1,297.78 for the year 1921. The principal point in issue is whether the petitioner derived any income from an investment in a syndicate which turned over certain assets to a corporation in exchange for shares of stock, the petitioner receiving 184 shares in the distribution thereof by the syndicate. An error alleged in paragraph 4(d) in the petition was withdrawn at the hearing. The facts as found were stipulated.

### FINDINGS OF FACT.

(1) Subsequent to March 1, 1913, the petitioner, in association with others, acquired certain oil leases covering property in Ohio and referred to herein as the " Ohio Leases," for the sum of $2,000. The petitioner and his associates continued to own and hold the leases until 1917, the petitioner's interest in them being one-third.

Without any operations ever having been carried on, the petitioner and his associates sold the leases in 1919 for $4,444, or at a total profit of $2,444, to a group of individuals or a syndicate, of which the petitioner was a member by reason of a cash investment of $1,200 on his part. His interest or share of the profit on the sale to the syndicate was $814.66. The syndicate acquired the leases in contemplation of organizing a corporation to take them over (together with certain other property) and to carry on operations under them. At or about the time of acquiring the lease the syndicate organized or caused to be organized the Emerald Petroleum Co., to which on May 17, 1919, it transferred the leases and other property in consideration of the issuance by the corporation to it or to its nominees of 2,392 shares of its capital stock of the par value of $25 per share. Of the total 2,392 shares received, 184 were distributed to the petitioner as one of the members of the syndicate that had organized the corporation and transferred the leases and other property to it. The stock of the corporation was never listed on any exchange. The total shares outstanding at any time up to May 31, 1919, were 5,775, of which 2,392 were issued on May 17, 1919, as aforesaid, to the members of the syndicate in exchange for the leases and other property. The corporation had no working capital, however, and to supply that need shares were sold to syndicate members and their friends for cash, at the rate of 5 shares for $100, which was considered as 4 shares at par, and 1 share as bonus. Such cash sales to syndicate members were:

| Date. | Number of shares. | Date. | Number of shares. |
|---|---|---|---|
| April 29, 1919 | 25 | May 24, 1919 | 354 |
| May 2, 1919 | 25 | May 27, 1919 | 386 |
| May 9, 1919 | 25 | May 29, 1919 | 440 |
| May 17, 1919 | 43 | May 31, 1919 | 676 |
| May 19, 1919 | 263 | | |
| May 21, 1919 | 499 | Total | 3,138 |
| May 22, 1919 | 402 | | |

Such cash sales to friends of syndicate members were:

| Date. | Number of shares. | Date. | Number of shares. |
|---|---|---|---|
| May 2, 1919 | 35 | May 16, 1919 | 15 |
| May 6, 1919 | 10 | May 23, 1919 | 50 |
| May 13, 1919 | 120 | | |
| May 15, 1919 | 15 | Total | 245 |

The only evidence of the stock having a market value on May 17, 1919, consists of the above-mentioned cash sales to syndicate members and their friends. In his income-tax return for 1919 the petitioner accounted for a profit of only $814.66 from the syndicate transaction. This was increased by the Commissioner in the determination of the deficiency by the amount of $2,480, computed as follows:

| | |
|---|---|
| 184 shares of stock at $20 per share | $3, 680 |
| Investment in syndicate | 1, 200 |
| Profit | 2, 480 |

(2) In 1919 the petitioner owned an interest in certain oil leases covering properties in the States of Ohio and Illinois, known as the "Murphy Brothers Co." leases. In such ownership the petitioner was associated with others. The petitioner's share of the cost of said leases and of equipment acquired in connection with them, plus additions and development costs, and less depreciation and depletion to date of sale was $57,950.70. In 1919 the petitioner sold his interest to a corporation for $49,309.24, which was paid partly in cash and partly in stock. In his income-tax return for 1919 the petitioner claimed the deduction of a loss sustained on the transaction of $8,641.45, which was disallowed by the Commissioner.

(3) Petitioner was the owner of residential property on Main Street, in the City of Washington, Pa. This property was acquired by the petitioner at a cost of $5,000. In 1919 he sold it for $6,000, receiving in cash at the time of sale the sum of $1,000, the balance of the agreed purchase price, to wit, the sum of $5,000, remaining on an installment mortgage. The mortgage was not turned into cash either in full or in part in 1919, and did not have a market value at that time in excess of $4,000.

In his income-tax return for 1919, the petitioner accounted for no profit in respect of the sale of the residential property. The Commissioner added to the net income reported $1,000 for profit on the sale of the residence.

OPINION.

1. In his income-tax return for 1919 petitioner accounted for a profit of $814.66 from the syndicate transaction by which he received 184 shares of stock of the Emerald Petroleum Co., his investment in the syndicate being $1,200. The respondent has determined that the fair market value of the shares of stock received was $20 per share and has computed a profit of $2,480 from the transaction. The basis for this computation is the sale by the syndicate to the syndicate members and their friends of shares of stock at the price indicated. We have no evidence that the petitioner could not readily have sold his shares of stock at a price of $20 per share at the date of receipt. For lack of proof that the respondent erred in his determination that the fair market value of the shares was $20 per share at date of receipt, the determination of the respondent upon this point is approved. Cf. *George H. Wheary*, 5 B. T. A. 829; *Cuba Grapefruit Co.*, 6 B. T. A. 260.

2. The parties have stipulated with respect to the second allegation of error, facts concerning which are set forth under paragraph (2) of the findings of fact, that the petitioner sustained a loss of $3,711.15 on the transaction.

3. The petitioner and the respondent have likewise stipulated with respect to the third allegation of error, which is concerned with the profit realized upon the sale of a residential property in Washington, Pa., that the petitioner realized a profit of $166.67 in 1919.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by LITTLETON and LOVE.